## UNITED STATED DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

CHRISTOPHER DAWAYNE JOHNSON and
CHRISTAL LYNN JOHNSON,

            Plaintiffs,

NO. 3:20-cv-00441
JUDGE TRAUGER

SHIPPS RV CENTERS, LLC, D/B/A
CAMPING WORLD RV SALES, and
REV GROUP, INC., D/B/A FLEETWOOD
REVRV GROUP,

DEMAND FOR JURY
TRIAL

            Defendants.

## FIRST AMENDED COMPLAINT

**COME NOW** Plaintiffs Christopher DaWayne Johnson and Christal Lynn Johnson ("Johnsons" or "Plaintiffs"), by and through undersigned counsel, and hereby file their First Amended Complaint against the above-captioned defendants Shipps RV Centers, LLC, d/b/a Camping World RV Sales ("Camping World"), and REV Group, Inc. d/b/a Fleetwood RevRV Group ("Fleetwood") (collectively, "Defendants"), showing the Court as follows:

## PRELIMINARY STATEMENT

1. This is an action by the purchasers of a defective, significantly impaired, and unrepaired recreational vehicle for, among other things, breach of express and implied warranties, for violations of the Magnuson-Moss Warranty Act, for violations of the Tennessee Uniform Commercial Code, and for violations of the Tennessee Consumer Protection Act.

2. The Johnsons purchased a new 2020 Fleetwood Bounder 36F recreational vehicle (the "Vehicle") on June 12, 2019. The Vehicle was manufactured by Fleetwood and sold to the Johnsons by Camping World as the dealer which has a service department.

3.     The Vehicle has express warranties including a Manufacturer's Warranty and a Chassis Warranty. In addition, the Johnsons purchased a Service Agreement. However, since its purchase, the Vehicle has had and continues to have severe and substantial defects and problems. The Johnsons have sought repeated repair of the serious defects in the Vehicle and have tendered the Vehicle to both Camping World and Fleetwood a number of times for substantial periods of time for repairs to be made under the warranties applicable to the Vehicle, but even after allowing Camping World and Fleetwood more than a reasonable amount of time to perform repeated repair attempts, the Vehicle continues to have serious defects which have not been repaired.

4.     The Johnsons, through counsel, requested in writing to rescind the purchase of the Vehicle based on the serious and unrepaired defects, but neither Camping World nor Fleetwood agreed to rescind the purchase of the Vehicle.

5.     The Johnsons would not have purchased the Vehicle if they would have known of the substantial and serious defects and that such defects would not be repaired.

6.     The Johnsons seek rescission of the Vehicle purchase with the refund or repayment to them of the purchase price plus interest paid to date as well as damages caused to the Johnsons related to the substantial defects in the Vehicle.

## PARTIES

7.     The Johnsons are individual consumers who reside at 101 Lee Court, Gallatin, Tennessee 37066.

8.     Shipps RV Centers, LLC is a Minnesota limited liability company with its principal place of business located at 250 Parkway Drive Suite 270, Lincolnshire, Illinois 60069. Shipps RV Centers, LLC does business as Camping World RV Sales at a retail business located at 2618 Music Valley Drive, Nashville, Tennessee 37214, which sells, among other things, recreational vehicles.

2

9.     REV Group, Inc. d/b/a Fleetwood RevRV Group ("Fleetwood") is a Delaware corporation with its principal place of business located at 111 East Kilbourn Avenue, Suite 2600, Milwaukee, WI 53202 and which also does business at 1010 Commerce Drive, Decatur, Indiana 46733. Fleetwood is a leading designer, manufacturer and distributor of specialty vehicles including recreational vehicles. Fleetwood regularly transacts business in Tennessee through its retail agents and dealers. Fleetwood offers and provides warranties and warranty repairs in Tennessee directly to customers such as the Johnsons and through its retail agents and dealers, and other warranty repair agents.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this matter under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that the Plaintiffs claim more than $50,000 in damages, exclusive of interest and costs, including without limitation through rescission and/or revocation of acceptance of the Vehicle and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

11.     Defendants are subject to personal jurisdiction in this District.

12.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; this District is where Defendant Camping World sold the Vehicle to Plaintiffs and attempted warranty repairs on the Vehicle; this District is where Fleetwood obtained and returned the Vehicle to when attempting repairs; and this District is where Defendants made misrepresentations to Plaintiffs about the Vehicle.

13.     Tennessee substantive law governs the Johnsons' claims.

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

14.     The Johnsons purchased and took delivery of the Vehicle, a new 2020 Fleetwood Bounder 36F, Vehicle Identification Number 1F66F5DY9K0A11333, expressly and impliedly warranted by Defendants from Fleetwood's agent and authorized dealership, Camping World, on June 12, 2019.

15.     The Johnsons purchased the Vehicle for personal, family, and household purposes.

16.     A true and accurate copy of the purchase contract ("Purchase Contract") for the Johnsons' purchase of the Vehicle is attached hereto as **Exhibit A**. The Purchase Contract shows, among other things, that (1) the base price of the Vehicle was $163,462.42, (2) the Johnsons traded in a 2019 Forest River 31LS recreational vehicle as part of the purchase, (3) the Johnsons paid the cash down amount of $2000.00 at the time of the purchase of the Vehicle, (4) as part of the purchase, the Johnsons purchased, among other things, a Vehicle Service Contract for $7995.00, GAP protection for $1495.00, Paint Protection for $2995.00, Tire and Wheel Protection for $1495.00, and Roadside Assistance for $899.00, and (5) the Johnsons paid a total amount of $164,057.61 related to the purchase of the Vehicle. The Purchase Contract states that the Vehicle is "New." The Purchase Contract is signed by both the Johnsons and Camping World as the Dealer. The Purchase Contract is dated June 12, 2019 and was executed by Camping World and the Johnsons on that date.

17.     At the time of the Johnsons' purchase of the Vehicle, the Johnsons purchased a Motor Home Service Agreement ("Service Agreement") for the Vehicle called the "Good Sam Extended Service Plan" for $7995.00. A true and accurate copy of the Service Agreement is attached hereto as **Exhibit B**. The Service Agreement is dated June 12, 2019, the date of the purchase of the Vehicle by the Johnsons. The Service Agreement provides to the Johnsons, among other things, (1) an express Chassis Warranty for 60/60000 applicable to the entire Motor Home,

4

(2) an express Manufacturer's Warranty for 12/15000 applicable to the entire Motor Home, and (3) an express 60 months/60000 miles New Unit Plan for the Plan/Type of Coverage applicable to both Chassis and Coach. The Service Contract states that the "Dealer" is Camping World. Camping World executed the Service Contract as the Dealer and is a party to the Service Contract as shown in the Additional Terms and Conditions.

18. The Service Agreement states that the Vehicle is covered by the New Unit Plan and that "New Unit" "[m]eans a UNIT that is covered by the manufacturer's full coverage NEW UNIT warranty at the time this AGREEMENT is purchased . . . ."

19. Camping World entered into the Service Agreement with the Johnsons on the date of the sale of the Vehicle, June 12, 2019, which was obviously within 90 days of the sale. Under, 15 U.S.C. § 2308(a), Camping World cannot disclaim any implied warranties. Therefore, Camping World's attempts to disclaim any warranties as set forth in the Purchase Contract, Service Agreement's Additional Terms and Conditions, and any other documents are void under that statute.

20. At the time of the Johnsons' purchase of the Vehicle, the Johnsons purchased Exterior / Environmental Protection, Interior Protection and Vinyl and Leather Protection Five (5) Year Limited Warranty ("Exterior and Interior Warranty") from Camping World as the Dealer for the amount of $2995.00. A true and accurate copy of the Exterior and Interior Warranty is attached hereto as **Exhibit C**.

21. At the time of the Johnsons' purchase of the Vehicle, the Johnsons purchased a five year Motor Home/Trailer Tire & Wheel Service Contract Protection Limited Agreement ("Tire & Wheel Protection Agreement") for the Vehicle for the amount of $1495.00. A true and accurate copy of the Tire & Wheel Protection Agreement is attached hereto as **Exhibit D**.

5

22.     At the time of the Johnsons' purchase of the Vehicle, the Johnsons financed the amount of $164,057.61 through a Promissory Note and Security Agreement ("Note") with U.S. Bank, N.A. dated June 10, 2019. A true and accurate copy of the Note is attached hereto as **Exhibit E**.

23.     At the time of the Johnsons' purchase of the Vehicle, the Johnsons purchased GAP Deficiency Waiver Addendum for $1495.00 which is dated June 12, 2019. A true and accurate copy of the GAP Deficiency Waiver Addendum is attached hereto as **Exhibit F**. Camping World is the Dealer as set forth in the GAP Deficiency Waiver Addendum and executed the GAP Deficiency Waiver Addendum as the Dealer. The GAP Deficiency Waiver Addendum states that the Vehicle is "New."

24.     The Johnsons, in deciding whether to purchase the Vehicle, relied on the reputation of the Defendants' and the Defendants' representations in their literature that the Vehicle was brand new, was fit for the ordinary uses to which a recreational vehicle is put and for the particular purposes for which the Johnsons wanted it, namely to travel and camp at campgrounds providing electric and water connections and at sites without such connections.

25.     From the date of purchase of the Vehicle, the Vehicle has had and continues to have severe and substantial problems.

26.     At numerous times from the date of purchase of the Vehicle, Plaintiffs have discovered and observed that the Vehicle does not conform to its warranties as there were and are numerous defects and nonconformities.

27.     On the day the Johnsons purchased the Vehicle from Camping World at its Nashville location on June 12, 2019, the Johnsons did a walk-through with a Camping World representative and service technician named David during which the following problems were observed for repair.

6

- The couch would not open or close.

- The bed hinge was broken.

- Some bin doors would not stay latched and would pop open.

At that time, the Camping World service technician named David represented to the Johnsons that parts for these problems were being ordered and that these problems and any other problems would be repaired quickly as soon as the required parts were obtained. At that same time, the Camping World service technician named David represented to the Johnsons that Camping World would do whatever is needed to repair all problems with the Vehicle even if Camping World had to get a new motor home.

28.     The Johnsons relied on these representations by Camping World in purchasing the Vehicle. The Johnsons would not have purchased the Vehicle but for these representations.

29.     While awaiting the parts for these repairs and before these repairs were done, the Johnsons took the Vehicle on its first trip. During that trip, the Johnsons discovered that the grey water tank was leaking into a bin and all over the new grill and cooking utensils that were stored in that bin. On that same trip, the Johnsons discovered that there was no hot water in the rear bathroom. On the same trip, Mr. Johnson was unable to raise the jacks due to no fluid in the hydraulic reservoir. Mr. Johnson had to find hydraulic fluid in the middle of the night in order to get the jacks to raise because the Johnsons had checked out and were preparing to return home.

30.     After returning home from that first trip with the Vehicle, Mr. Johnson informed Camping World of these additional problems discovered during the first trip. Mr. Johnson returned the Vehicle to the Camping World Nashville service center on or about June 17, 2019. Mr. Johnson told them he had another trip planned in a few weeks and would need all repairs completed to the Vehicle before that second trip. However, when Mr. Johnson got the Vehicle on or about June 25,

7

2019, he saw that the Camping World service center only repaired the problem regarding the hot water in the rear bathroom before the Johnsons' second trip.

31.     In communications with Camping World in Nashville about the problems with and needed repairs to the Vehicle, the Johnsons spoke with the General Managers at Camping World, first Randall Chambers and then temporary General Manager Roy Crutchfield. Both Mr. Chambers and Mr. Crutchfield represented to the Johnsons that the problems would be fully repaired. In addition, the supervisor of Camping World's Service Department, whose first name is Rick, represented to the Johnsons that Camping World would do whatever had to be done to make the Johnsons happy even if that meant replacing the Vehicle with a new vehicle.

32.     The Johnsons relied on these representations by Camping World in purchasing and not returning the Vehicle. The Johnsons would not have purchased the Vehicle and would not have kept the Vehicle but for these representations.

33.     The Johnsons obtained the Vehicle from Camping World on or about June 25, 2019 and took the Vehicle on a second trip about a month after purchasing it. While on that second trip, the Vehicle had the following more severe problems:

- Both air conditioning units stopped working in 95 degree weather. It reached 92 degrees in the coach. Due to the very high temperatures in the Vehicle, the Johnsons had to cut this second trip short and lost money for their campsite.

- The dinette was extremely difficult to convert.

- Screws in the dash fell out.

- The cables from the awning broke and it was very difficult to get the awning back in.

34.     Because of the continuing numerous problems, Mr. Johnson emailed Camping World on or about July 6, 2019 about the numerous problems. Camping World told Mr. Johnson to bring the Vehicle in and the problems would be repaired.

8

35. Mr. Johnson took the Vehicle back to Camping World on or about July 12, 2019 for Camping World to make the many repairs that had to be made. At the time Mr. Johnson dropped off the Vehicle for the repairs, Mr. Johnson told Camping World that they had 30 days to get everything repaired before the Johnsons' next trip. David in the service department told Mr. Johnson that Camping World was having issues getting approved by Fleetwood to make the repairs, and that the replacement couch had not even been ordered. The Vehicle stayed at Camping World for 120 days from July 12, 2019 to November 8, 2019. When Mr. Johnson picked up the Vehicle on November 8, 2019, numerous problems remained with the Vehicle. Specifically, even after being at Camping World for 120 days, the Vehicle still had the following problems:

- No hot water in rear bathroom
- Air conditioning units on roof not working
- Couch remains broken
- Protectant for fabric not installed
- Weather stripping on slides showing light on driver side
- Dish remotes missing
- Stereo remote missing
- Dash screws continue to be loose
- Grey tank continues to leak
- No air conditioning vent in back bathroom
- Wire hanging off awning
- Cockpit seat belts not properly installed.
- Dinette seats very hard to operate
- Bolt cap on side of toilet front bathroom missing
- Curtain holders for top queen bunk in wrong location

9

- Rear bin door passenger side latch broken

- Four bins with the Johnsons' property in them had standing water in them

- Tankless water heater leaking

- Kitchen sink drain leaking

- Antifreeze leak

- Bin doors leaking and holding water

- Rear bin door on passenger side still popping open

- Driver side slide weather stripping on bottom still showing light through when out

- Slide lock is damaging wall and air conditioning sensor near front of slide gets outside air blowing on it when slide is out

- Dash shakes and squeaks when driving

- Stickers from factory that were installed on wood cabinets pulled off the finish

- Trim on side of pantry popping off

- Shades not properly working

- Washer unit still sticking out of cabinet. When the Johnsons purchased the Vehicle, Camping World installed a new Splendide washer/dryer unit provided by the Johnsons, but did not install that unit flush with the cabinet

- WiFi ranger not working

36.     Mr. Johnson informed Camping World of these numerous, continuing problems. However, instead of repairing these remaining and continuing problems, Camping World told the Johnsons that the Johnsons needed to contact the manufacturer, Fleetwood, about the problems with the Vehicle.  Mr. Crutchfield told the Johnsons that if Fleetwood could not fix the problems, Fleetwood should buy back the Vehicle from the Johnsons.

37.     Instead of Camping World making arrangements with Fleetwood to have the repairs made, Camping World told the Johnsons that the Johnsons would need to contact Fleetwood to

10

ask to have the repairs done. The Johnsons made repeated attempts to contact a representative of Fleetwood to discuss the numerous problems with the Vehicle. After finally being able to make contract with someone at Fleetwood who was Fleetwood representative Ricardo Torres in Decatur, Indiana, the Johnsons requested that all of these problems be repaired and corrected by Fleetwood. The Johnsons informed Fleetwood of all of these problems needing repair and correction.

38.     Fleetwood representative Ricardo Torres in Decatur, Indiana represented to the Johnsons that Fleetwood would repair and correct all of the problems with the Vehicle. Fleetwood transported the Vehicle to Fleetwood's service facility in Decatur, Indiana on or about December 13, 2019 for the repairs and corrections. Fleetwood returned the Vehicle to the Johnsons on or about February 26, 2020.

39.     The Johnsons relied on these representations by Fleetwood in retaining the Vehicle. The Johnsons would not have retained the Vehicle but for these representations.

40.     Even though Fleetwood had the Vehicle for 75 days, the following problems remain with the Vehicle because Fleetwood failed to repair and correct these items even though Fleetwood had more than a reasonable amount of time to do so.

- Passenger seat recliner does not remain in place but pops out frequently including whenever the Vehicle hits a bump which is a major problem

- Both front side windows leak water from top which is a safety problem

- Bin door on passenger side continues to pop open even though locked

- Entry door does not latch properly and rattles when the Vehicle is in motion

- Entry door code does not work because there is no entry door code

- Trim coming loose in a number of places

- Dash screws still coming loose

- Wall paper next to cabinet in front bathroom wrinkled

11

- Light shines through under driver side slide when extended.

These defects and nonconformities continue to exist and have not been repaired by Defendants.

41.     The first repair attempt of the Vehicle was at Camping World and lasted from June 17, 2019 to June 25, 2019. The second repair attempt of the Vehicle was at Camping World and lasted from July 12, 2019 to November 8, 2019. The third repair attempt of the Vehicle was at Fleetwood and lasted from December 13, 2019 to February 26, 2020.

42.     In total, the Vehicle has been in for repair and, therefore, out of service to the Johnsons for 204 days which is almost seven months even though the Johnsons purchased the vehicle less than a year ago on June 12, 2019.

43.     Despite the foregoing demands and more than sufficient time allowed to repair the Vehicle, Defendants have failed to satisfy their obligations under the applicable warranties and to this day have failed to satisfy their obligations.

44.     At the time the Johnsons purchased the defective and nonmerchantable Vehicle, they were unaware of the numerous concealed and hidden defects and malfunctions of the Vehicle and would not have purchased the Vehicle had they known its true defective condition. With regard to the problems the Johnsons did know about at the time of purchase, the Johnsons only purchased the Vehicle based on the representations and assurances of Camping World representatives that all of the problems would be properly and timely repaired and by the representations of Fleetwood that all defects would be repaired and corrected.

45.     However, the numerous repair attempts to the Vehicle by Camping World and Fleetwood have not corrected the ongoing, nonconformities and defects that remain and continue to exist with the Vehicle as listed above.

46.     The significant and substantial defects and nonconformities set forth above continue to exist and substantially impair the Vehicle's use, reliability, safety, and value to the Johnsons.

47.     The Johnsons relied on the Defendants' representations in their express and implied warranties that any problems with the Vehicle would be timely and fully repaired and on the Defendants' communications and representations to the Johnsons promising to repair, replace, and eliminate the defects in the Vehicle. The Defendants and their agents misled and misrepresented to the Johnsons that all such repairs and corrections would be made.

48.     The Vehicle remains in a defective and unrepaired condition because the Defendants have failed to fulfill the express and implied warranties as well as the Defendants' representations that all needed repairs would be fully and timely made.

49.     The Vehicle, in its present form, is not acceptable to the Johnsons and is not what they bargained for or paid for when they purchased the Vehicle.

50.     Because the Vehicle is not acceptable to the Johnsons and is not what they bargained for, the Johnsons through undersigned counsel, sent the letter attached as **Exhibit G** to Camping World and Fleetwood demanding that the Vehicle be returned with a full refund of all amounts they paid including the amount they financed so that they could pay off that amount. Camping World refused such request in a letter dated February 4, 2020, a true and accurate copy of which is attached as **Exhibit H**. Fleetwood declined that request in a letter dated February 10, 2020, a true and accurate copy of which is attached as **Exhibit I**.

## FIRST CAUSE OF ACTION
### Breach of Written, Express Warranties Pursuant to the
### Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, <u>et seq.</u>, and Tenn. Code Ann. § 47-2-313

51.     The Johnsons incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

13

52.     The Johnsons are "consumers" as defined in 15 U.S.C. § 2301(3).

53.     Defendants are each both a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

54.     The Vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

55.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

56.     15 U.S.C. § 2304(a)(1) requires Defendants, as a warrantor, to remedy any defect, malfunction or nonconformance of the Vehicle within a reasonable time and without charge to the Johnsons.

57.     The Vehicle was manufactured and supplied by Defendants after July 4, 1975, and express warranties were given to the Johnsons as a part of the basis of the bargain for this Vehicle, which express warranties meet the definition of written warranty contained in 15 U.S.C. § 2301(6) and the definition of express warranties set forth in Tenn. Code Ann. § 47-2-313.

58.     The written warranties given by Defendants to the Johnsons, including without limitation those set forth in the Service Agreement, became part of the basis of the bargain between Defendants as the suppliers of the Vehicle and the Johnsons as the buyer of the Vehicle.  The Johnsons purchased the Vehicle for their own personal, family, and household use and not for resale of the Vehicle.

59.     The Johnsons relied on the Defendants' written, express warranties that all problems, defects, malfunctions, and nonconformities with the Vehicle would be timely and fully repaired when they purchased the Vehicle.  Defendants' express written warranties were part of the basis of the bargain.  The Johnsons would not have purchased the Vehicle but for such express warranties provided by the Defendants.

14

60. Other than the problems known by the Johnsons at the time of purchase of the Vehicle, which Camping World said would be repaired and corrected, the Johnsons could not reasonably have discovered the remaining nonconformities with the Vehicle prior to Plaintiffs' purchase of the Vehicle.

61. The Johnsons submitted the Vehicle for warranty repairs to the Defendants as referenced above. Defendants failed to comply with the terms of the express written warranty provided to the Plaintiffs by failing to repair the Vehicle's defects within a reasonable period of time under the Vehicle's warranty as described herein.

62. Despite repeated demands made by the Johnsons to the Defendants, Defendants have failed to remedy the Vehicle's defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written warranties applicable to the Vehicle.

63. The Johnsons have given the Defendants reasonable opportunities to cure said defects, but Defendants have been unable and/or unwilling to do so within a reasonable time.

64. The express written warranties provided to the Johnsons have failed of their essential purpose and the Defendants have violated the Magnuson-Moss Warranty Act ("Act" or "MMWA") and the Tennessee Uniform Commercial Code due to the Defendants' inability and/or refusal to repair or replace the defects, malfunctions, and nonconformities within a reasonable time, and due to their refusal to provide the Johnsons a refund. 15 U.S.C. § 2304(a)(1) and (4) & Tenn. Code Ann. § 47-2-313

65. As a result of Defendants' breaches of written warranty, and Defendants' failure to remedy the same within a reasonable time and without charge to the Johnsons, the Johnsons have suffered damages.

66. As a result of said nonconformities, the Johnsons cannot reasonably rely on the Vehicle for the ordinary purpose of safe, comfortable, and efficient use as a recreational vehicle.

15

67.     The Johnsons would not have purchased the Vehicle had they known, prior to the time of purchase, that the Vehicle contained the defects identified herein.

68.     As a direct and proximate result of Defendants' violations of the Act and breach of their written warranties, the Johnsons have incurred substantial losses, and are entitled to legal and other relief under 15 U.S.C. § 2310(d), including rescission or revocation of acceptance of the purchase of the Vehicle, damages for the Vehicle's purchase price or diminished value on its date of purchase and other expenses, the loss of the use and enjoyment of the Vehicle, and all litigation expenses for prosecuting this action, including costs, expenses, and attorney's fees as allowed by the Act, 15 U.S.C. § 2310.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. and Tenn. Code Ann. §§ 47-2-314 and 47-2-315

69.     The Johnsons incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

70.     Defendants are merchants with respect to recreational vehicles.

71.     The Vehicle was subject to implied warranties, as defined in 15 U.S.C. § 2308 and Tenn. Code Ann. § 47-2-314 and § 47-2-315, running from the Defendants to the Johnsons.

72.     An implied warranty that the Vehicle was merchantable and was fit for its ordinary purpose arose by operation of law as part of the purchase of the Vehicle.  An implied warranty of habitability and workmanship also arose by operation of law as part of the purchase of the Vehicle.

73.     The Vehicle was manufactured and supplied by Defendants after July 4, 1975, and implied warranties of merchantability, fitness for a particular purpose, and habitability and workmanship were given to the Johnsons as a part of the basis of the bargain for this Vehicle, which implied warranties meet the definition of implied warranty contained in 15 U.S.C. § 2301(7).

16

74.     Defendants breached the implied warranties of merchantability, fitness for a particular purpose, and habitability and workmanship in view of the nonconformities and Defendants' inability or refusal to correct them in that the Vehicle was not in merchantable condition when sold to the Johnsons, or at any time thereafter, the Vehicle was not fit for the ordinary purpose for which the Vehicle is used, and did not meet the warranty of habitability and workmanship. 15 U.S.C. §§ 2308, 2310(d).

75.     The Johnsons notified Defendants of the defects in the Vehicle within a reasonable time after the Johnsons discovered them.

76.     As a result of Defendants' breaches of the implied warranty of merchantability, implied warranty of fitness for a particular purpose, and habitability and workmanship, the Johnsons have suffered damages, including but not limited to incidental and consequential damages.

77.     As a direct and proximate result of Defendants' violations of the Act and breach of the implied warranties, the Johnsons have incurred substantial losses, and are entitled to legal and other relief under 15 U.S.C. § 2310(d), including rescission or revocation of acceptance of the purchase of the Vehicle, damages for the Vehicle's purchase price or diminished value on its date of purchase and other expenses, and all litigation expenses for prosecuting this action, including costs, expenses, and attorney's fees as allowed by the Act, 15 U.S.C. § 2310.

**THIRD CAUSE OF ACTION**
**Rescission and Refund Pursuant to the**
**Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)**

78.     The Johnsons incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

79.     Defendants provided a full warranty to the Johnsons at the time of purchase of the Vehicle.

17

80. The Service Contract states that the Vehicle is covered by the New Unit Plan and that "New Unit" "[m]eans a UNIT that is covered by the manufacturer's *full coverage NEW UNIT warranty* at the time this AGREEMENT is purchased . . . ." (emphasis added)

81. Under the Act, if a full warranty has been provided to the customer and the product contains a defect or malfunction, the manufacturer and seller must permit the consumer to elect either rescission and refund after a reasonable number of repair attempts. Section 2304 of the Act imposes minimum federal warranty standards for full warranties and provides remedies for their breach including refund of the purchase price if the warrantor cannot remedy defects or malfunctions after reasonable attempts to do so.

82. Because Defendants have not remedied the defects or malfunctions in the Vehicle after reasonable attempts to do so, the Johnsons are entitled to rescission and refund related to the purchase of the Vehicle.

**FOURTH CAUSE OF ACTION**
**Declaratory Judgments Under the Magnuson-Moss Warranty Act**

83. The Johnsons incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

84. The Johnsons are entitled to declaratory relief that (1) the written warranties provided by Defendants bar Camping World's attempts to disclaim implied warranties, (2) Camping World cannot disclaim any implied warranties because Camping World entered into the Service Agreement with the Johnsons, and (3) the arbitration provision in the Purchase Contract, Service Agreement, and other documents is not enforceable.

> *a. The written warranties provided by Defendants bar Camping World's attempts to disclaim implied warranties.*

85. If a written warranty is given by the supplier of a consumer product, implied warranties may not be disclaimed for the duration of the written warranty under 15 U.S.C. § 2308.

18

86. Defendants gave written warranties in the Purchase Contract, Service Agreement, Exterior and Interior Warranty, and Tire & Wheel Protection Agreement.

87. Camping World cannot disclaim any implied warranties because of the written warranties provided by Defendants.

  b. *Camping World cannot disclaim any implied warranties because Camping World entered into the Service Agreement with the Johnsons.*

88. In addition, under, 15 U.S.C. § 2308(a), Camping World cannot disclaim any implied warranties because it entered into the Service Agreement with the Johnsons.

89. Camping World entered into the Service Agreement with the Johnsons on the date of the sale of the Vehicle, June 12, 2019, which was obviously within 90 days of the sale.

90. Camping World entered into the Service Agreement because it sold and owns the Service Agreement.

91. The Service Agreement provides that "[i]n the event of a MECHANICAL BREAKDOWN, take the UNIT to the dealer that sold YOU this AGREEMENT, if at all possible." Under Tennessee law, where service is to be obtained from the dealer who sold a vehicle, the dealer enters into the contract. Patton v. McHone, 822 S.W.2d 608 (Tenn. Ct. App. 1991).

92. Therefore, Camping World's attempts to disclaim any warranties as set forth in the Purchase Contract, Service Agreement's Additional Terms and Conditions, and any other documents are void under 15 U.S.C. § 2308(a). This voiding includes the attempt by Camping World to assert such disclaimers in the letter attached hereto as Exhibit H.

  c. *The arbitration provisions in the Purchase Contract, Service Agreement, and other documents are not enforceable.*

93. The arbitration provisions set forth in the Purchase Contract, Service Agreement, and other documents are not enforceable for three reasons, with each reason being sufficient to void the arbitration provisions and/or make such provisions unenforceable.

19

94.     First, because a Federal Trade Commission regulation under the MMWA precludes enforcement of binding arbitration clauses, the arbitration provisions in the Purchase Contract, Service Agreement, and other documents at issue in this action are not enforceable.

95.     The MMWA allows a warrantor to include a provision for "informal dispute settlement procedures" for breach of written warranty claims and to require consumers to resort to such procedures before bringing a civil action. 15 U.S.C. § 2310(a). The Act instructed the Federal Trade Commission (the "FTC") to "prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty." 15 U.S.C. § 2310(a)(2). In response, the FTC adopted 16 C.F.R. § 703.

96.     In 16 C.F.R.§ 703.1(e), "*Mechanism* means an informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of Title I of the Act applies, as provided in section 110 of the Act, 15 U.S.C. 2310."

97.     The FTC regulation expressly precludes informal dispute settlement procedures under the MMWA, called the Mechanism, from being legally binding. 16 C.F.R. § 703.5(j) provides that "[d]ecisions of the Mechanism shall not be legally binding on any person." This FTC regulation precludes the enforcement of binding arbitration clauses in written warranties. See 40 Fed.Reg. 60168, 60211 (1975) ("There is nothing in the Rule which precludes the use of any other remedies by the parties following a Mechanism decision . . . . However, reference within the written warranty to any binding, non-judicial remedy is prohibited by the Rule and the Act.").

98.     Accordingly, the arbitration provisions in the Purchase Contract, Service Agreement, and other documents at issue in this action cannot be and are not legally binding and, therefore, are not enforceable.

99.     Second, the arbitration provisions in the Purchase Contract, Service Agreement, and other documents at issue in this action are not enforceable because they are not clearly and

conspicuously disclosed within the document containing the written warranties provided by Defendants.

100.    In the MMWA, Congress enabled the FTC to "prescribe rules for determining the manner and form in which information with respect to any written warranty of a consumer product shall be clearly and conspicuously presented or displayed so as not to mislead the reasonable, average consumer . . . ." 15 U.S.C. § 2302(b)(1)(B).  The FTC promulgated 16 C.F.R. § 701.3, which requires warrantors to "clearly and conspicuously disclose *in a single document* in simple and readily understood language, the following items of information" which include required information about informal dispute settlement procedures.

101.    The arbitration provisions at issue are not clearly and conspicuously disclosed within the document containing the written warranties provided by Defendants.

102.    Defendants, therefore, cannot seek to enforce the arbitration provisions at issue because they are not clearly and conspicuously disclosed within the document containing the written warranties provided by Defendants.

103.    Third, the arbitration provisions in the Service Agreement is not enforceable under 16 C.F.R. § 703.3 because that provision charges the Johnsons as the consumers a fee for use of the dispute resolution Mechanism.

104.    Under 16 C.F.R. § 703.3(a), "[t]he Mechanism shall be funded and competently staffed at a level sufficient to ensure fair and expeditious resolution of all disputes, and ***shall not charge consumers any fee for use of the Mechanism.***"  (emphasis added).

105.    The Arbitration Provision in the Service Agreement, however, requires that the Johnsons share equally the filing fees related to arbitration with the American Arbitration Association under its Commercial Arbitration Rules ("The filing fees to begin and carry out arbitration will be shared equally between YOU and US.").  The Commercial Arbitration Rules

21

Fee Schedule requires that an amount of $2900.00 be paid as the Initial Filing Fee and the amount of $2200.00 as the Final Fee when the amount of the claim is between $150,000 and $300,000. The Johnsons, therefore, would have to pay at least the amount of $2550.00 regarding arbitration and, therefore would be charged a fee for use of the Arbitration Provision Mechanism set forth in the Service Agreement. That provision violates the requirements in 16 C.F.R. § 703, and, therefore, is not enforceable.

### FIFTH CAUSE OF ACTION
### Violations of the Tennessee Consumer Protection Act,
### Tenn. Code Ann. §§ 47–18–101 et seq.

106. The Johnsons incorporate by reference all allegations contained in this Complaint as though fully stated herein.

107. Plaintiffs and Defendants are "persons" under Tenn. Code Ann. § 47–18– 103(14).

108. The Vehicle is a "good" under Tenn. Code Ann. § 47–18–103(8) because it is tangible chattel that was purchased or leased for personal, family or household use.

109. Plaintiffs are "consumers" under Tenn. Code Ann. § 47–18–103(3) because they are natural persons who sought or acquired the Vehicle by purchase.

110. At all relevant times, Defendants have engaged in "trade," "commerce," and a "consumer transaction" under Tenn. Code Ann. § 47–18–103(20) by advertising, offering for sale, selling, leasing, and/or distributing recreational vehicles in the United States, including Tennessee, directly or indirectly affecting Tennessee citizens through that trade and commerce.

111. The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47–18–104(a); (b)(6), (7), and (19).

112. Specifically, and as alleged above, Defendants knew or should have known of the defective and nonconforming nature of the Vehicle prior to selling it or offering it for sale to

customers including the Johnsons. Defendants also knew or should have known of the defective and nonconforming nature of the Vehicle prior to returning it to the Johnsons after Defendants represented that they would repair and correct all problems with the Vehicle.

113. By failing to disclose and/or concealing the defective nature of the Vehicle from Plaintiffs at the time of purchase, Defendants violated the TCPA by representing that the Vehicle was new and that it had characteristics as a new recreational vehicle that it did not have, and represented that the Vehicle was of a particular standard, quality, or grade when it was of another.

114. By failing to disclose and/or concealing the defective nature of the Vehicle from Plaintiffs at the times of return of the Vehicle to Plaintiffs, Defendants violated the TCPA by representing that the Vehicle had been fully repaired and that it had characteristics as a new recreational vehicle that it did not have, and represented that the Vehicle was of a particular standard, quality, or grade when it was of another.

115. By failing to fully repair the Vehicle numerous times and despite more than reasonable time to do so, Defendants violated the TCPA by representing that the warranties provided regarding the Vehicle were full warranties that would lead to the repair and correction of all problems, defects, malfunctions, and nonconformities with the Vehicle.

116. The facts concealed and/or not disclosed by Defendants to Plaintiffs are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase or retain the Vehicle.

117. Plaintiffs relied to their detriment on those false, misleading, or deceptive acts or practices of and by Defendants.

118. Had Plaintiffs known that the Vehicle was defective at the time of purchase and at the times the Vehicle was returned to Plaintiffs, they would not have purchased or retained the Vehicle.

23

119.     Those "false, misleading, or deceptive acts or practices" were a producing cause of the economic damages sustained by Plaintiffs.

120.     Defendants' failures to disclose the numerous defects and nonconformities in the Vehicle and failures to disclose that the warranties would not result in complete repair of the Vehicle constitute willful or knowing violations of the TCPA under Tenn. Code Ann. § 47–18–109(3)-(4).  To the detriment of Plaintiffs, Defendants' conduct took advantage of Plaintiffs' lack of knowledge and ability, was a deception that jeopardized the safety of Plaintiff and others, caused excessive and continuing damages to Plaintiffs, and was in bad faith.

121.     Defendants' violations of the TCPA were made in connection with the purchase of the Vehicle by the Johnsons.

122.     The Johnsons relied on Defendants to disclose material information the Defendants knew or should have known, such as the defective nature of the Vehicle at the time of purchase and at every time the Defendants returned the Vehicle to the Johnsons, and not to induce the Johnsons into a transaction they would not have entered had the Defendants disclosed the material information.

123.     The Johnsons provided adequate notice and opportunities to repair the Vehicle to Defendants.

124.     The Johnsons should be awarded three times the amount of their economic damages because Defendants' intentional failure to disclose the defects constitutes a willful or knowing violation of the TCPA.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs pray for judgment against Defendants as follows:

a.      An order approving revocation of acceptance or rescission of the Johnsons' purchase of the Vehicle;

b.      Money damages, in the form of a refund of the full contract price of $164,057.61, including, trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiffs on the subject contract;

c.      Equitable relief including, but not limited to, for the Defendants to repurchase the Vehicle from the Plaintiffs for the price paid by Plaintiffs, plus all taxes, financing costs (interest), licensing and registration costs, insurance premiums paid, transfer fees and costs incurred as a result of the repurchase, and all other costs related to the repurchase of the Vehicle;

d.      Declaratory relief via a declaratory judgment ordering that (1) the written warranties provided by Defendants bar Camping World's attempts to disclaim implied warranties, (2) Camping World cannot disclaim any implied warranties because Camping World entered into the Service Agreement with the Johnsons, and (3) the arbitration provision in the Purchase Contract, Service Agreement, and other documents is not enforceable;

e.      Incidental and consequential damages;

f.      Pre- and post-judgment interest at the maximum rate allowed by law;

g.      Treble and punitive damages;

h.      Costs, expenses, and attorney's fees as allowed by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310; and

i.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts and as to all issues.


*/s/ Andrew J. Pulliam*
Andrew J. Pulliam   (BPR #016863)
**WYATT, TARRANT & COMBS, LLP**
333 Commerce Street, Suite 1050
Nashville, Tennessee 37201
(615) 244-0020 / Fax (615) 256-1726
apulliam@wyattfirm.com

*Attorney for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2020, a true and correct copy of the foregoing was served via Federal Express on Ms. Kristin Zobel, Esq., Senior Corporate Counsel, Shipps RV Centers, LLC d/b/a Camping World RV Sales, 250 Parkway Drive, Suite 270, Lincolnshire, Illinois 60069-3700; Legal Department, REV Group, Inc. d/b/a Fleetwood RevRV Group ("Fleetwood"), 111 East Kilbourn Avenue, Suite 2600, Milwaukee, WI 53202; and Mr. Barry Krueckeberg, Dispute Resolution Administrator, REV Group, Inc. d/b/a Fleetwood, 1010 W. Commerce Drive, Decatur, Indiana 46733.

*/s/ Andrew J. Pulliam*